The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. The first case before the Court today is 192381, Star Pipe Products v. United States. It is a decision that has been appealed from the Court of International Trade. Ms. Mohand, with your three minutes reserved, are you prepared to begin? Yes, I am prepared. Thank you. You may begin. Thank you. Good morning, Your Honors. May it please the Court. There are two issues on appeal in this case. The first is the merits of commerce's scope ruling using the mixed media analysis under Midcontinent and the second is whether Star Pipe's arguments concerning retroactive assessment of duties are moot. I plan on first addressing the merits of commerce's scope ruling and then going on to the issue of mootness unless Your Honors would prefer that I start the other way around. No, I think that's fine. Thank you. The products at issue in this case are the steel threaded rod components in Star Pipe's joint restraint kits. These kits are not a mere aggregation of disparate items packaged together. Each of the components in the kit interacts and fits with the other to create a unique article of commerce. These products are used in the water and wastewater industries to connect and secure pipes and bolt together pipe joints. The products in these products, the castings, are the essential component of the kits, both by weight and by value, and the other products, the bolts, the nuts, the washers, and the steel threaded rod components are auxiliary hardware incidental to the casting. Counselor, this is George Reynolds. Yes. Yes. Yes, I have a question. I'd like to direct your argument to the following. Is it your position that under mid-continent now, in that case, that commerce failed to apply the K2 factors and that it should have? That is correct. And did it first have to assess whether prior scope rulings had consistently applied the K2 factors? So, the prior scope rulings, the K2 factors, and the HTS that were used, these are all criteria that were outlined under step two of mid-continent. So, all of these were things that commerce, when issuing its final scope ruling, should have considered all of these criteria. Those prior scope rulings that were discussed in Starpipe's scope ruling request and in the briefs before this court and then the trial court, in all of those prior scope rulings, commerce did get to a K2 analysis. And we think, in addition, that is also why, in this case, in addition to the mid-continent guidance, commerce should have gone to the K2 analysis. So, are you saying that it is required in every case? I am saying that in this case, which involves a mixed media product, it is required because commerce in its final scope ruling and its IDMMO, it stated that it was going to be using the mid-continent guidance in making its mixed media analysis. Do you believe mid-continent mandates a K2 analysis in every mixed media case? I believe that it is one of the criteria that mid-continent says that commerce should look at when overcoming the presumption of whether a component is within the scope of an order when it's included as part of a mixed media item. This is Judge Chen. Ms. Mohan, did mid-continent say commerce should look at those K2 factors, or did it say it may consider those K2 factors? So, mid-continent said that in overcoming the presumption, commerce must look at published prior guidance. And then one of the things it said was it may look at... Ms. Mohan, did it say it must look at those published guidance, or did it say it must if the published guidance is clear and provides clarity in some kind of generally applicable criteria or bright-line rule? That was my understanding, and my understanding was mid-continent went further and said these prior scope rulings lack clarity. I'm quoting from 1305 of mid-continent. Another problem with these prior scope rulings is that they lack clarity. And then it went further and said in Walgreen, we observed that in prior mixed media scope rulings, commerce has eschewed developing any, quote, formal definitions, quote, generally applicable criteria, or, quote, bright-line rules from conducting mixed media inquiries, and has instead relied on, quote, ad hoc determinations, citing to Walgreen. And in Walgreen, my understanding is that Walgreen itself urged that the K2 factors or K2 criteria was necessary and required to consider them in a mixed media analysis, and commerce did not do that there. But we ended up affirming the scope ruling and saying, no, the K2 criteria is not required because the pencil scope rulings that were being relied on by Walgreen just don't have sufficient clarity. So, can you help me through this? Because I'm just trying to read these two opinions, and to me, they reject, in my view, any position that these pencil scope rulings provide some kind of clear guidance on how to handle mixed media cases. And so, therefore, as I understand these opinions, they say these pencil rulings don't provide that kind of clear guidance, and now we're hearing from mid-continent that to overcome the presumption that components such as these steel-threaded rod components in these kits are outside of the order, we need to see something that's clear in pre-existing published guidance. And as I understand these two opinions, they take away from you the reliance on the pencil scope rulings as being that clear, pre-existing, generally applicable guidance. So, help me understand where am I on the wrong track here. So, one thing that the court said in mid-continent, while it said all of the things that you just read out, it also did say, though, that these prior scope rulings do establish that there exists in some circumstances an implicit mixed media exception. And then it went in the absence, even in the absence of explicit language in the final order, as Walgreens confirmed. That's on that same page 1305. Right. And then it went... And then it went further and said, however, they provide only limited guidance regarding the scope of that exception or any circumstances in which it may be applied. However... Which is consistent with the idea that they don't provide clear guidance. But then, if you read further down in that paragraph, it then did say that on remand, commerce may attempt to draw an ascertainable standard from these rulings. So, my reading of this is that the court did not entirely foreclose the possibility that there was an ascertainable standard. It's just that it pushed it back to commerce and said, commerce, you need to come up with the ascertainable standard that needs to be applied here and see if these... And take a look at these prior scope rulings to see if there is one. And one thing, if you read those prior scope rulings, at a minimum, even if it's not definitive, those prior scope rulings, at a very minimum, show that there is no presumption that components of mixed-media items are in scope one. And at a minimum, they show that commerce needed to look at a K2 analysis to make its decision. In all of those prior scope rulings, commerce went to K2. And that's important, especially in these cases, because mixed-media cases are sort of inherently ambiguous. I mean, in Mid-Continent, this court noted that, it said on page 1305, 1306, we finally note that commerce's problems are largely self-inflicted because in the past, commerce has given low priority to an approach that should receive the highest priority, providing coherent and consistent guidance to regulated parties. So here, there is no guidance for... Mid-Continent guidance for evaluating mixed-media products.  Ms. Mohan? Yes. This is Judge Chen again. Are you familiar with a federal register notice that came out last month where commerce has proposed a new amendment and creating a K3 set of criteria for mixed-media analysis? Yes, I am familiar with that. Okay. I just wanted to check. Okay. So this is Judge Reina. I want to take us back to the language of the regulations that apply in this process, especially 3051.225K2. Now, I understand that to say that when the above criteria, meaning the K1 criteria, are not dispositive, then the circuitry will further consider the K2 factors. Now, I think that that's what the regulation says. And the way I understand this case is that here, there was nothing in the K1 factors that expressly addressed mixed-media. So the K1 factors were not dispositive. That is correct. That is correct. Yes. Okay. So I did... Here's where we've come down to the rub. And so K1 is not dispositive. So does that mean that commerce must, in accordance with its own regulation, consider the K2 factors? That is correct. And especially that was true in this case because commerce did implicitly acknowledge that the order and the K1 factors were not enough here by initiating a formal scope ruling. It actually initiated the formal scope ruling under 351.225E, which says that if the secretary finds that a product... Whether a product is included within the scope of the... Right. It initiated... Counsel, it initiated the scope ruling, but then commerce turned around and said it wasn't necessary to go beyond K1. And it pointed to... Well, first, it started with the fact that, of course, even you conceded that in the absence of the kit, these products would be within the scope of the order. And then it pointed to the fact that the original scope ruling specifically referenced products that can be used in WaterWorks applications, which is exactly the purpose of these kits, right? That is the purpose of those kits. But what... The language that was included in the petition and the ITC's report was referred only to the steel-threaded rod could be used for joint restraint kits or systems. It did not say that those joint restraint kits or systems that have... That come in with a... There's a distinction. It didn't address whether those joint restraint kits or systems were within the scope of the order, just that it could be used for that purpose. So at a minimum, we think that the K1 factors here were silent. And the fact that commerce initiated formal scope ruling under that regulation, .225E, although it did ultimately make its decision on K1, there was an implicit acknowledgement by initiating that it couldn't do so because you go to K2 when it cannot be determined based solely on the application and the descriptions of the merchandise referred to in paragraph K1 of this section. So there is an implicit acknowledgement by initiating the case that you're supposed to go to K2. And that's particularly here where the prior published guidance, which is these prior scope rulings, all of them went to K2. So at a minimum, we think... And also, Starpipe presented evidence under the K2 factors. So under substantial evidence, the other substantial evidence standard, commerce should have looked at that evidence in making its determination. I see that I'm getting into my rebuttal. All right. You're in your rebuttal. Yes. Do you want to say a few words before you sit down about your other issue? Yes. Thank you very much. The other issue here is whether Starpipe's claims concerning retroactive assessment of the merchandise are moot because the entries have liquidated. And very simply, they are not moot because these entries are live due to a prior disclosure that was filed in this case. Based on the regulations and this court's decisions on United Steel and Fasteners and in Suncreen, the law is very clear that if custom has not previously suspended liquidation, duties may only apply from the date of initiation. In this case, it's a matter of fact, it's a matter of the record. It's on the record and the government has acknowledged that the entries were never suspended. And as I just mentioned, commerce did initiate a scope ruling in this case. What's your response to the government's argument that you waived at this point? So there was no waiver because this issue came up for the first time on oral argument at the trial court. It was an issue that the trial court decided to respond to. The government never briefed it. There was no briefing on this issue below. So it only came up, it's come up, the briefing has happened for the first time before this court because the trial court decided this on its own motion. But because of this prior disclosure, if Starpipe does not get a ruling on retroactivity by facing this choice of whether to pay duties when it's not supposed to under the regulation and USS and Suncreme, but then risking the benefits. Ms. Moghan, I just want to make sure I understand your position. Are you saying that if we were to entertain your argument and read the order as being all imports after the initiation of the scope inquiry and the scope of the order doesn't cover pre-initiated imports, are you saying that at that point you would be relieved of having to worry about ever having customs come after you for duties on pre-initiation imports? Or wouldn't it be true that they still would have that option just as they would in any other situation in which after a scope ruling, post-initiated imports are assigned duties? Yes. So post-initiation duties, you know, if we lose on the merits, post-initiation duties would be subject to duties. But that issue here is whether the pre-initiation entries are subject to duties. Right. Did you understand my question? It was a little convoluted. Do you understand what I'm asking? I thought I did, but if you could restate it, I'm happy to make sure I'm... Okay. One more time. Let's say we give you what you want and read the order and say, of course, the order only relates to imports after the initiation of the scope inquiry. For purposes of what's going on here in this proceeding and this appeal, we're only talking that order only goes to imports after the initiation. Okay? Okay. Are you saying then that if we were to do that interpretation, then you would never have to worry anymore about customs coming after you for duties for pre-initiated imports, pre-initiation imports? They would be barred somehow? Yes. Well, yes. If we get a ruling... Because I thought there was a statutory framework that gives customs the potential possibility, regardless of how we construe this particular order, to go after you for duties for pre-initiation imports. Well, I guess there could be a 592 action, I suppose, but because of L3, if we get a ruling on retroactivity here, there should be no duties as a matter of law on pre-initiation entries. Unless they do a 592 proceeding. No, I believe even in that case, because L3 says... In this case, there was no suspension of liquidation. And under L3, under USNF, and under SUNPREME, because of the importance that those cases said regarding the notice that's needed to give to importers about whether their products are in scope, the duties really could only be effective prospectively after the date of initiation, if we get a ruling on retroactivity here, in our favor. Okay. Okay. Counselor, you're way past your time. I'll give you a minute and a half for rebuttal. Thank you very much. Okay. All right. Ms. McCarthy? Good morning. May it please the court? If I could just start by clearing up some confusion and colloquy with Starpipe's counsel. Just to be clear, Commerce's finding, which is in Joint Appendix, page 262, was clearly and unambiguously that the K1 factors were dispositive. On page 262, the department found a fact that because the department is able to make a determination based on Starpipe's application for a scope ruling, the language of the scope of the order and the criteria set forth in 19 CFR 351.225 K1, it is not necessary to examine the factors set forth in 19 CFR 351.225 K2. And in our view, Starpipe has failed to establish that there's a lack of substantial evidence for Commerce's finding that the K1 factors were dispositive. Counselor, this is Judge Rayna. Assuming that the K1 factors were not found to be dispositive, then is Commerce required to apply the K2 factors at that point? Yes. Under its regulation, Commerce, under a different set of facts, of course, that's not the set of facts we have here, but if Commerce were to have found that the K1 factors were not dispositive under the regulation, it goes to K2. And that is standard law. There's numerous cases in this circuit, in this court rather, holding that, you know, the standard application of Commerce's regulation. One of the points of dispute here is that Starpipe's position would be that this court in mid-continent now, which was a decision issued in response to an appeal by us, by government, and by Target in that case, that the court somehow purported to rewrite the whole regulatory scheme and require a K2 analysis in every instance. We do not, of course, I am not in any position to tell the court what it meant when it wrote the mid-continent nail decision. That has taken the unreasonable interpretation of the court's guidance. Let's see if I understand this correctly, because it seems to me that Commerce did not find that the K1 materials were expressly included or excluded mixed-media items. I beg to differ, Your Honor. Again, within the mid-continent nail framework, and mid-continent was an unusual mixed-media The Commerce seems to have reached the point where it said that we've examined the K1 factors and we still find that the order is silent as to inclusion or exclusion. Right, which is exactly the situation... And therefore... I'm sorry. No, go ahead. That was exactly the situation in mid-continent nail, which is why the court found... Okay. Mid-continent nail was an unusual, unlike Walgreen, in which Commerce applied a mixed-media test and found that the subject merchandise was within scope. Now, in Walgreen... In mid-continent nail... In Walgreen, they did find the K1 factors to be dispositive. Right, and provided for inclusion. Okay. In mid-continent nail, mid-continent nail is a rare case in which Commerce was using a mixed-media analysis to remove, to exclude, otherwise subject merchandise from the scope of the order. And the way Commerce did that was by focusing on the toolkit rather than the nails themselves. And just as in here, there was no dispute in that case that the nails, if imported alone, would be subject to the scope of the order. Just as in this case, there's no question, there's no dispute that the still-reddit thread, if imported on its own, would be within the scope of the order. And because the scope was silent as to mixed-media, and because the K1 factors, in this case, Commerce relied on the ITC investigation showing that these components were used in a waterwork setting, that that alone established there was a presumption of inclusion. And that that presumption of inclusion applies. And if I could just go back to Starpipe's ever-shifting position, in its initial scope of the order, on Appendix Page 54, Starpipe explicitly told Commerce that it regarded this court's decision in Mid-Continent Mail to be wrongly decided. That's what it said on Appendix Page 54. It said that this court's decision was wrongly decided. And in fact, at Appendix Page 449, the Court of International Trade, and Judge Barnett's practices to issue questions to counsel before oral argument, question number five was, does Starpipe still maintain that this court's decision in Mid-Continent, meaning your court's decision in Mid-Continent, is wrong? So just to clarify, Starpipe's original contention was that this court's decision was somehow not binding on the Court of International Trade, which is untenable. And so, by the time that it issued its comments in response to the initiation of the scope ruling inquiry, all of a sudden, Starpipe changed its stance. Okay. All right. So counsel, let me ask you this question. So in this case, a presumption that was reached was based on silence, right? I mean, basically... As in Mid-Continent Mail, yes. As in Mid-Continent Mail. Yes. No, no. We're getting there. We're getting to Mid-Continent. In this case, the presumption, we arrived at a presumption because the K-1 factors were not dispositive. But yet, they were silent as to the inclusion. No, no. Your Honor, the issue, this is a negative inquiry. This is, and again, I'm not purporting to doubt, the way we read this court's guidance in Mid-Continent was addressing a very real due process consideration that the court had And because the scope of the order in Mid-Continent Mail, as in this case, makes it very clear that these subject components are within the technical scope, and there's no dispute about that, and the K-1 factors made it clear that these nails within a toolkit should be considered to be within scope. There's no exclusion. There's no reason. There's no notice to anyone in the importing community as to why these stale metal drugs There's no express exclusion, and there's no express inclusion. They're silenced. No, there is an inclusion, Your Honor. Okay, can I just back up, Your Honor? Your Honor, Mid-Continent, I mean, I'm sorry, StarPipe has no statutory right to mixed-media analysis. It has no regulatory right to mixed-media analysis. A mixed-media analysis is something that Commerce developed ad hoc as a way to improve administrability. Take, for instance, in the Mid-Continent Mail context. Those tiny little nails within the context of a toolkit were de minimis value, and it was burdensome to impose anti-dumping duty orders on a de minimis amount of nails. And this court in Mid-Continent recognized the administrability concerns that Commerce had. It said, it's too bad. You need to follow the law. You need to follow the plain language of your scope, and unless you can justify an exclusion here and overcome the presumption of inclusion, then you need to assess the duties on these nails. And that is how that litigation turned out. Okay. And this case is materially indefensible. Excuse me. Excuse me. Let me ask this to the government's position on this particular question. If the K-1 factors are not dispositive, is Commerce required to undertake a K-2 inquiry? Yes. Under its regulation, if the K-1 factors are not dispositive, is Commerce made a finding of fact that the K-1 factors are dispositive in this case? Okay. So the answer is yes. Yes. Correct? It's another set of facts. I'm sorry to be so... No. I'm just asking. Yeah. No. I agree with you, Your Honor. The way the regulation operates, if the K-1 factors are not dispositive, then the regulation requires Commerce to consider the K-2 factors. But that is not what happens here. Commerce found that the K-1 factors should be... Is it necessary, in order to consider the K-2 factors, is it necessary for there to be prior scope rulings that address K-2 factors? Is it necessary in order for Commerce to do a K-2 analysis? Yes. Is it just automatic? If K-1 is not dispositive, we move on to K-2? Or is there something in between there? Well, that's the normal operation of not just mixed media cases, but all scope cases. Commerce... I mean, this Court, as Your Honor may know, there's language in Meridian suggesting that this Court has added a K-0, or a step zero. There are three steps. First, Commerce needs to look at the scope of the order, the plain language of the scope of the order. And if that's dispositive, then it moves to K-1. And if K-1 isn't dispositive, then it moves to K-2. So that's the orderly operation of its regulation. But these mixed media cases are complicated here. And the late Judge Sakalas really identified why... I think it's an understatement to say they were very displeased with Commerce's attempts to develop a mixed media test in Minkan at Nail, because he was concerned that depending on whether Commerce focused on the subject merchandise, or whether they focused on the kid as a whole, it was outcome determinative. So if Commerce decided to focus on the kid as a whole, it would be excluded every time. And he felt like there was no notice in the language of the order, there was no public notice that there was this sort of hidden exclusion embedded somewhere by looking at these factors. And that's why this Court, we believe... Well, it sounds... Excuse me. It sounds to me that you read Mint Continent as saying that any time you have any silence, when you apply the K-1 factors, that that's dispositive. I just want to be clear what we're talking about silence. We're talking about... Well, here the K-1 factors... Excuse me. The K-1 factors were found to be silent on mixed media. The K-1 factors were found to be dispositive, yes. They were found on mixed media, which means... They were found to be silent. No, which means that... Your Honor, I'm sorry. I want to be very clear about this point. There's no question that the steel-readeth-rod components of these joint restraint kits are clearly within the scope of the order. No one is challenging that, and that's not what I'm asking. What I'm asking is that here the K-1 factors found that they're silent as to the mixed media. Which means that there's a presumption of inclusion. Okay. So you agree. Do you agree, yes or no? Are the K-1 factors silent as to mixed media? They do not mention mixed media specifically. So they're silent. The answer is yes. The answer is yes, correct? They're silent in a dispositive way, yes. Because in order for... So that's my next question, and you've answered it. Anytime there's silence, you're saying that silence on mixed media, when you apply the K-1 factors and you're silent on mixed media, that that silence is dispositiveness. Yes. I mean, if... Okay. All right. Thank you. The fact of the matter is... Okay. This is Judge Chen. Let me see if I can take a crack at this. It... In some ways, it feels like MidContinent uses K-1 potentially twice in two different contexts. As I understood it, it first looked at the nails inside of that toolkit and tried to figure out were those... Was there something ambiguous about the order as to those nails? And because the nails fit the description of the nails in the order, you know, under the standard, look at the order, look at K-1, there was nothing ambiguous and everyone agreed that the nails fell within the literal terms of the order. And then MidContinent does an interesting thing. So, in the ordinary course of things, that would be the end of the inquiry. But for mixed media, MidContinent says, well, because it's part of this larger kit, let's also go back now to K-1 and see if anything in that criteria, the petition, the investigation materials suggest that mixed media, nails inside of a mixed media set should be excluded. And then the answer to that question was no. And then MidContinent says, okay, so now there's a presumption and the only way you can overcome the presumption is looking at published guidance that provides clear factors or a clear framework. And so it said, Commerce, go back and see if there's anything you've got that shows pre-established clear guidance on how to deal with mixed media that would overcome this presumption. Now, in a sense there, I guess what I'm trying to ask is, do you read MidContinent as kind of going back to K-1 and thinking about K-1 a second time around for when it comes to mixed media? I think Your Honor has a point and it could look that way, but I want to be careful. I want to be clear because I feel like I'm not being very clear about the context of this. This was dispensation. Commerce had twice tried to use a mixed media test to exclude these nails from the scope of the order. And it was flatly rejected by Jessica Hollis twice. We appealed because Jessica Hollis said that Commerce didn't even have the authority to do this analysis at all. We succeeded on that issue, but then the court gave a special dispensation. It didn't require Commerce to do this because nothing requires Commerce to do a mixed media analysis. And the court said, you can look at this, you can look at that, you can look at the K-2 factors. In fact, on page 1305 of MidContinent, it says, we simply hold that Commerce may attempt to develop such an interpretation using the sources we've identified. There's nothing mandatory about this. There's nothing that would require, there's simply no basis to say that there was some counsel trying to define a meaning from ad hoc rulings by looking at K-2 factors to create an exclusion for a subject merchandise that does not exist in the scope of the order. And at the very end, because counsel made a point of this, at the very end of 1305, this court chastised Commerce for not being clearer. And it says, when you issue the orders up front, you should be clearer. That's a very point well taken, but it was in the context of Commerce trying repeatedly to exclude subject merchandise from the scope of the order through a mixed media analysis. Ms. McCarthy, you're out of time, but I just really wanted to get quickly to the second issue of this case. Sure. Thank you. Is there any real debate here that the order doesn't include pre-initiation imports? I mean, don't you agree that the most reasonable reading and maybe the only reasonable reading is that it doesn't include pre-initiation imports? Yes, but no one's ever said that they have. From the time of the scope ruling, Starpipe asked Commerce for an advisory opinion that these would not be retroactively applied. There's nothing in the challenge liquidation instruction that in any way applies to these entries. The uncontested record of the facts in this case, appendix page 416, is that these entries were never suspended, and therefore they were liquidated at zero rate. There's absolutely no harm for Starpipe here, which is why Judge Barnett properly declared the issue moot. The notion that Starpipe had no idea that Judge Barnett had blindsided them, Judge Barnett raised the issue of the mootness issue on November 30th, 2018, where he asked the parties to identify the status of these entries and whether there was a mootness issue. The parties filed a joint status report in March of 2019. The court's questions explicitly raised the question of mootness on May 16th, 2019, and then there was an oral argument on May 22nd, 2019, at which mootness was discussed at length. And then the CIT's not issued its decision until July. At no point, at no point during any of that time did Starpipe ever ask. Ms. McCarthy, this is fine. I just wanted to clarify, because you didn't quite come out and say it in your red brief, that the government agrees that, you know, that this order does not encompass and could not encompass pre-initiation imports. That's all. We've never said that. This is a non dispute. I'm hard pressed to think of a case in which there's been less of an Article 3 case of controversy. Okay. Thank you, Ms. McCarthy. Ms. Mohan, given the fact that we allowed Ms. McCarthy to go over, I think, at least as much as you did, I'll give you your full three minutes back. Thank you very much, Your Honor. Yes, thank you very much, Your Honor. First, to rebut the points raised on the first argument regarding midcontinent. With regard to the government's argument that we said that midcontinent doesn't apply in our initial scope ruling, that is true. We made that statement in our initial scope ruling, but we dropped that position. Counsel, did you make the argument that midcontinent was wrongly decided? We made that statement, but we used the analytical framework in midcontinent, even in that initial scope ruling. And then when Commerce initiated the scope ruling, we dropped that position. And since that time, from the beginning of the scope ruling through the trial court's decisions and even before this court, we have followed the guidance and have agreed that midcontinent is the correct legal, is binding and is the correct legal sentence. I don't understand, in light of the decision in midcontinent, how you can say that midcontinent mandates a K-2 analysis in every instance. So in this case, the framework of midcontinent, well, first of all, unlike what the government said, midcontinent did not rewrite the regulatory framework. It used the existing K-1, K-2 regulatory framework and applied it to a mixed media case because it recognized that there was... But you still didn't answer my question, counsel. My question is, I don't understand how you can read midcontinent to say that a K-2 analysis is required in every instance of a mixed media presentation or importation. It did not... Okay. Is that what your position is? That is our position, and what midcontinent did say is that Commerce, in applying the mixed media analysis, needs to look at the prior published guidance. And the prior published guidance in this case, as cited in our scope request and in the brief, were these prior scope rulings in which, in every one of those, Commerce went to K-2. And in every single one of those, Commerce went to K-2. So you're relying on the pencil cases. That's correct. Right? That's correct. In those cases, in every single instance, Commerce... of the potential uses for that product, but you're saying you overcame that presumption because of the pencil cases. Is that right? Not only because of the pencil cases, but we are saying that even if a presumption of inclusion has arisen because the K-1 factors are silent and the order is silent, even under midcontinent, when that presumption arises, you know, the government keeps kind of ending its analysis at that presumption. But that's not what midcontinent said. Midcontinent said, okay, if there is a presumption, you can overcome it by the prior published guidance. You can overcome it by looking at the K-2 factors. You can overcome it looking at the HTS that was used. And we presented evidence under all of these that were not considered by Commerce in its final decision memo. Okay. Thank you, counsel. May I make one just closing point regarding the second issue? Briefly, yes. Just very briefly, this is the opposite of an advisory issue. The fact that duties are not due on pre-initiation entries is settled. Duties both under the regulation and under Suncreme and USNS. And if we don't get a ruling on this issue in this case, then there is harm to Starpipe because it will either have to pay duties. If it's settled, why do we have to address it? The issue of – so the issue that needs to be addressed is whether this argument is moot because the entry is liquidated. And it is not moot. This is not an advisory opinion because there is a prior disclosure that has kept these entries live. And that – and so the AD duties are going to be due on those pre-initiation entries if we don't get a ruling on this issue. Okay, counsel. I understand. I understand. Okay. Thank you, counsel. We need to move on. Thank you very much, your honors. Okay. The case will be submitted.